ESTATE OF WALTER J. HILL, DECEASED, RICHARD A. BODINE, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20781. Promulgated September 7, 1950.

*John A. Reed, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $136,150.93 in estate tax. The only issue for decision is whether the Commissioner erred in determining that a portion of the value of a trust created by the decedent on January 2, 1919, should be included in his gross estate under section 811 (a) of the Internal Revenue Code. Another issue relating to administration expenses incident to the prosecution of this proceeding requires no decision at this time. The parties have filed a stipulation which is adopted as the findings of fact.

The decedent, Walter J. Hill, died on March 4, 1944, a resident of

the State of Montana. The Federal estate tax return was filed with the collector of internal revenue for the State of Montana.

A Trust Agreement dated January 2, 1919, was executed by the decedent, his then wife, Dorothy Barrows Hill, and two trustees named in the trust instrument. It was recited in the Trust Agreement that the decedent desired to provide for the maintenance and support of his wife and their daughter, Dorothy. The trust was to terminate upon the death of the last to die of the wife and the daughter. The wife had been divorced and remarried at the time of the decedent's death and was, under those circumstances, entitled to receive $4,999.92 annually from the trust for her life. The daughter was over 21 years of age at the death of the decedent and was entitled to receive $12,000 annually from the trust as long as she lived. However, if she predeceased her mother, leaving a child or children surviving, those survivors were entitled to have for their benefit during the minority of the youngest, so much of the $12,000 theretofore payable to their mother, as the trustees might deem reasonably necessary for their maintenance, education, and support, and after the youngest became of age, they were to share in the $12,000 per stirpes, but all payments were to cease upon the termination of the trust.

Any excess income after the payment of expenses and the amounts above mentioned was to be paid to the decedent or his estate. No income was to be accumulated.

The trust property remaining in the trust, in case the mother had predeceased her daughter, was to go to the children of the daughter per stirpes at the death of the daughter, but if the daughter left no children, the trust corpus was to return to the estate of the decedent. If the daughter predeceased her mother, then the trustees were to select, at the death of the mother, a portion of the trust property sufficient in their judgment safely to produce net income of $12,000 per year, after taxes, and transfer that to the surviving children of the daughter per stirpes and the balance of the trust property was to be transferred to the decedent or his estate.

The trust deed provided that in case the wife remarried, in case the daughter predeceased her mother leaving no issue, and in case the mother predeceased the daughter, then, as each of those events occurred, the trustees were to retain that portion of the corpus which in their sole judgment would "be sufficient in amount and character safely to produce such amount of income as shall be reasonably necessary for the subsequent administration of the trust * * * and the balance of such securities and properties shall forthwith be released and discharged from this trust and shall vest in, and shall by the trustees be transferred, assigned, and delivered over to, the party of the first part, his executors, administrators or assigns." The trustees returned $150,-000 of corpus to the decedent in March 1939 after his wife remarried.

The annual gross income of the trust for the years 1920 through 1937 ranged from a low of about $37,000 in 1937 to a high of about $46,000 in 1935 and for 15 of those years was a little over $38,000. The income of the trust for the years 1940 through 1944 ranged from a low of about $28,500 in 1943 to a high of about $33,000 in 1944 and averaged in excess of $30,000. Expenditures of the trust chargeable to income were a little under $2,000 annually up until 1934. Between 1934 and 1944 those expenditures have ranged from a low of $1,558.45 in 1940 to a high of $5,424.71 in 1935 and averaged about $3,200 annually. There was always excess income of the trust received by the decedent or his estate. It amounted to about $6,500 annually for the years 1920 through 1933. Thereafter and up through 1944 it has ranged from a low of $4,347.93 in 1937 to a high of $13,911.90 in 1939 and averaged $11,159.17 from 1939 through 1944.

The trust principal at the outset consisted of $900.000 face amount of Great Northern Railway Co. 4¼ per cent bonds. The corpus of the trust fund on March 4, 1944, consisted of securities having an aggregate value of $786,569.60.

Dorothy Barrows Hill was born on January 12, 1888. She was divorced from the decedent on September 28, 1922, and married Harold S. Cook on August 5, 1938. Dorothy Hill, the daughter, was born on December 26, 1908. She was married and, on March 4, 1944, had one daughter, born May 26, 1939. She has since been divorced and remarried.

The Commissioner, in determining the deficiency, added to the net estate as reported $432,250.41. He gave the following explanation:

It is held that there should be included in the decedent's gross estate, under the provisions of Section 811 (c) of the Internal Revenue Code as a "transfer intended to take effect in possession or enjoyment at or after decedent's death", and under the provisions of Section 811 (a) of the Internal Revenue Code for the reason that the decedent or his estate had not parted with dominion thereover, that portion of the date of death value of the assets comprising the trust created by decedent as of January 2, 1919, which exceeds the amount necessary to produce an income of $12,000.00 per annum and the value of the annuity of $416.66 per month payable to Dorothy Barrows Hill (now Mrs. Cook) for life. The amount of the adjustment is determined as follows:

| | |
|---|---|
| Value of trust property at decedent's death | $786,569.60 |
| Fund needed to produce $12,000.00 per annum at 4% | 300,000.00 |
| | |
| Balance | 486,569.60 |
| Value of $416.66 per month for life of a woman aged 56: 12 x $416.66 equals $4,999.92 x factor A of Regulations 105 (10.66982) x monthly payment factor $1.01820). ($53,348.25 x 1.01820) | 54,319.19 |
| | |
| Excess of fund—adjustment | $432,250.41 |

The Commissioner, for reasons of his own, has abandoned all reliance upon section 811 (c) and now relies solely upon section 811 (a),

the possible application of which is all that need be considered. The correctness of the computation to determine the present value of the life estate of the wife is not questioned. The Commissioner has assumed that issue of the daughter will survive her and has excluded $300,000 to represent the interest of the daughter and her issue in the trust. He chose that amount because at 4 per cent it would produce $12,000 annually.

The petitioner approaches the problem from an entirely different angle and objects strenuously to the exclusion of only $300,000 representing the interest of the daughter and her issue. It calls attention to those provisions of the trust imposing the duty upon the trustees and giving the trustees absolute discretion to select property for the benefit of the daughter's issue sufficient safely to produce annual net income of $12,000 after the payment of taxes. The petitioner called as a witness an officer of the corporate trustee who testified that he would not expect any of the corpus to be returned to the estate either upon the death of the wife or at the later termination of the trust, because he thought all of the corpus would be deemed by the corporate trustee necessary "safely to produce a net income, after the payment of taxes thereon, of $12,000 per year." The petitioner comes to the conclusion that no part of the value of the trust corpus should be included in the gross estate of the decedent, but, if any is to be included, it is only the present worth of the right to receive the excess income during the existence of the trust. No findings of fact have been made based upon the testimony of the petitioner's witness, but that testimony has been carefully considered in the decision of the case.

It is not to be doubted for a moment that the trustees are to exercise a real discretion or that the safety of the interest of the grandchildren is to be the foremost consideration. Still, they can not take such a pessimistic view of the future upon the termination of the trust as to frustrate completely the decedent's obvious intention that excess corpus be returned to his estate. He deemed $900,000 ample corpus to produce net trust income of $30,000 at the time he created the trust and actually it produced considerably more than that over an extended period of time. Also $150,000 was returned to him in 1939 after his wife remarried. Excess income must be paid to the estate of the decedent during the existence of the trust. Therefore, it is no great hardship upon the estate if the trustees retain more corpus than is needed to pay the specified amounts of income to the beneficiaries during the life of the trust. But that benefit to the estate will cease when the trust terminates and then the trustees will have to make a decision that will be just and fair not only to the daughter's issue, if any survive at that time, but also to the estate of the decedent and those entitled to share in that estate. The decedent retained a valuable interest which must be valued and included in his gross estate for estate tax purposes.

One of the issues in *Adriance* v. *Higgins*, 113 Fed. (2d) 1013, is somewhat similar to the present issue. Adriance and his wife entered into a settlement of marital differences under which, *inter alia*, he was to pay her $4,500 annually during her life for her support and maintenance. The contract created a trust in which it was recited that Adriance transferred to the trustee certain property as security for the payment of the $4,500 annually to his wife. The trustee was to make the payments from the income of the trust and Adriance was to make up any deficit. The trustee was to pay over the trust fund to the husband or to his legal representatives upon the death of the wife. The corpus of the trust was to be maintained at $100,000. The Court held that the reversion which Adriance created was his property and fully taxable under section 302 (a) of the law then in effect, as an interest of the decedent at the time of his death. The Court included the entire $100,000 in his estate without deduction for the present value of the life estate of the widow but its reasons for not allowing the deduction were mentioned only after a categorical holding that section 302 (a) applied. Section 811 (a) corresponds to former section 302 (a). The Commissioner, in determining the deficiency of the present case, has subtracted the present value of the life estate of the former wife as of March 4, 1944, so that question is not in issue here. However, the *Adriance* case is authority for including the decedent's interest in the present trust in his gross estate. The present trust, in so far as it concerns the wife, at least, was a property settlement connected with marital differences. The cases are not distinguished in principle by reason of the factual difference that here the wife could look only to the trust whereas Adriance was primarily liable and required to make up any deficit in income. Nor does the fact that the trust in the present case benefited not only the wife but also the daughter and her issue, serve to distinguish the cases. A proper amount should be excluded from the gross estate to represent the interest of the daughter and her issue in the trust property, and if that interest can be properly excluded, the situation is then indistinguishable from the *Adriance* case. See also *Security First National Bank of Los Angeles, Executor*, 35 B. T. A. 815.

A logical and admissible interpretation of the trust is that the decedent intended the same amount to be returned to him or his estate and the same amount to go to the surviving issue of his daughter upon the termination of the trust regardless of whether terminated by the death of his wife or by the death of his daughter. The corpus, upon termination by the death of the wife, would consist of property deemed sufficient to produce annual net income of $16,992.92. The trustees would then segregate and give to the surviving issue corpus deemed sufficient safely to produce $12,000 annually, after taxes, and would transfer the balance to the estate of the decedent. The corpus, upon

· termination by the death of the daughter, would consist only of property sufficient to produce annual net income of $12,000, (the excess corpus would have been returned to the decedent's estate at the earlier death of his wife) and that remaining corpus would go to the surviving children. In other words, the decedent intended that some part of the corpus would be returned to him or to his estate either at the death of his wife or at the later termination of the trust and it would be the excess of corpus over that needed safely to produce annual income of $12,000 after taxes.

The Commissioner, in computing the $300,000 exclusion, gave no consideration to expenses of the trust or to the provision about the $12,000 being tax free and the interest rate of 4 per cent which he used might be too optimistic. It is not improbable that the trustees will turn over to the issue of the daughter more than $300,000. The Court does not have much basis for excluding any certain amount but has a duty to approximate a correct amount as best it can, taking into consideration the entire record. The decedent placed $900,000 in the trust to produce safely, after expenses, annual income of $30,000, but he retained the right to any excess income of the trust. $30,000 is to $900,000 as $12,000 is to $360,000. The fact that the estate is to receive excess income offsets the necessity for discounting to present worth the amount of corpus which it will receive eventually. Cf. *Security First National Bank of Los Angeles, Executor, supra.* $360,000 would appear to be an adequate amount to produce $12,000 annually in excess of expenses of the trust as long as it continues and to cover any possible taxes thereafter. That exclusion added to the uncontested value of the life estate of the wife leaves $372.270.41 as the proper amount of the total value of the trust corpus at the date of death to be included in the gross estate.

*Decision will be entered under Rule 50.*